Opinion delivered June 25, 1886.

[No. 4046.]

## BILL WATERHOUSE *v.* THE STATE.

BURGLARY.—" DOMESTIC SERVANT," as that term is defined by legal lexicographers, and as it is used in Article 714 of the Penal Code, means a servant who resides in the house with the master he serves, and does not include a servant whose employment is outside, and not in the house. A farm hand, who sleeps and eats outside of the master's house, though he performs chores inside of the house, when directed, does not come within the meaning of the legal term "domestic servant." Note the state of proof in this case *held* not to show that the accused was a "domestic" servant.

APPEAL from the District Court of Panola. Tried below before the Hon. J. G. Hazlewood.

The conviction in this case was for the burglary of the house of C. O. Respass, in Panola county, Texas, on the tenth day of March, 1886. A term of three years and six months in the penitentiary was the penalty assessed by the verdict.

Mrs. C. O. Respass, the wife of the prosecuting witness, was the first witness for the State. She testified, in substance, that the defendant was in the employ of her husband, as a farm hand, from Christmas eve, 1885, until March 10, 1886. On the evening of the last mentioned day, being Sunday, the witness left her home to visit the home of her father-in-law, about three hundred yards distant, and in sight. She left home about one hour before sun down, accompanied by her little brother-in-law. She closed and bolted, but did not lock the doors of her house. The defendant was standing in the yard when she left. While the witness was at the house of her father-in-law, her little brothers-in-law were sent back to her house for a bucket of water. On their return with the water, just before sun down, they reported to the witness that the doors of her house were open, and that the defendant was gone. Witness repaired to her house at once, reaching it about sun down. She found the house open, and that the defendant had gone. The hasp of her husband's trunk had been wrenched in two, and the trunk opened, and several articles, including a money belt, some tobacco, and some cartridges that were in the trunk, were missing. Her husband's pistol, which was kept in a provision box, was also gone. Witness's husband returned home afterwards, and went in pursuit of the defendant, and brought the missing articles back home. Defendant was hired as a farm hand, and did not eat or sleep in the house that was entered, but would perform any little chores, such as making fires, bringing water, etc., that was required of him. The house burglarized could not be opened without displacing the bolts, which the wind could not have done. Witness did not consent for the defendant to enter that house, or remove the articles mentioned.

C. O. Respass testified, for the State, that when he returned to his home on the evening of March 10, 1886, and discovered that his house had been burglarized, he went to the town of Carthage, and reported the burglary to the sheriff. He and the sheriff then repaired to the public square, and found the defendant in company with some other negroes. Witness said to the sheriff: "There is Bill, now." Defendant started to run, without saying a word to witness, and stopped only when the sheriff drew

his pistol and threatened to shoot. He was then searched, and all of the missing articles were found upon his person. Witness hired the defendant as a farm hand, but defendant would make fires in, and bring water to the dwelling house, when required. He slept in the gin house, and ate his meals in the dining room or kitchen, which was a separate building from the one entered. The articles described belonged to the witness, and were taken from his private dwelling, without his knowledge or consent, and at a time when neither the defendant nor other person had the witness's consent to enter said house. Defendant usually kept his clothes and other possessions in the gin house, where he slept, or at the house in Carthage where his washing was done. On his return home, after the apprehension of the defendant, the witness found the defendant's clothes and a pair of shoes in an old out house, and not in the gin house where he slept. The State closed.

Lee Respass, the brother of the prosecuting witness, testified for the defense, that he, his brother, and two step brothers, went to the house of C. O. Respass, about one hour before sun down, on the evening of Sunday, March 10, 1886. When he reached a point about thirty yards distant from the house, he saw the defendant step out of the door of the said house, to the gallery. The door was open when witness first saw it on that occasion. Neither witness nor either of the boys with him went into the house. Witness did not, when he got back to his father's house, tell his sister-in law, Mrs. C. O. Respass, that her house was open and the defendant gone.

The motion for new trial raised the question discussed in the opinion.

. No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is an appeal from a conviction for burglary. If the defendant was a domestic servant of the owner of the house, the conviction cannot stand, for in such case the statute (Penal Code, Art. 714) requires that there shall be an *actual breaking*, and the evidence found in the record does not show such a breaking.

Was he a domestic servant? The wife of the owner of the house, a witness for the State, testified that "the defendant was

employed by her husband to do farm work; that he would bring water, make fires, and do any thing about the house for them that he was required; he did not sleep or eat in the house that was entered." The owner of the house testified that he "hired defendant at the sum of ten dollars per month; that defendant would make fires, bring water in the dwelling house of witness and family when told to do so; that he was hired as a farm hand, and slept in the gin house at night, and ate his meals in the dining room or kitchen, which was separated from the house that was entered."

The article of the code we have cited uses the terms "a domestic servant or other inhabitant of such house," and the Supreme Court, in Wakefield v. The State, 41 Texas, 558, says: "These terms do not extend to a servant whose employment is out of doors, and not in the house," and quote with approval the definition in Bouvier, that "domestics are those who reside in the house with the master they serve." Now, very clearly the defendant did not reside in the house with his employer. He did not eat or sleep there; and the fact that, on occasion, when bidden to do so, he brought water or made fires in the house, does not make him a domestic within the meaning of the statute, his employment being as a farm hand. He had no right to enter the house, such as is conceded to domestics by the law.

The judgment is affirmed.

*Affirmed.*